IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

* * * * * * * * *

| | |
|---|---|
| CENTURY INDEMNITY COMPANY, | ) |
| | )    Civil No.  2:97-CV-00925 BSJ |
| Plaintiff, | ) |
| | ) |
| vs. | )    **MEMORANDUM OPINION** |
| | )    **& ORDER** |
| THE HANOVER INSURANCE | ) |
| COMPANY, THE HARTFORD | ) |
| INSURANCE COMPANY, AND PACIFIC | ) |
| INSURANCE, LTD., | ) |
| | ) |
| Defendants. | ) |
| | ) |

```
┌─────────────────────────────┐
│          FILED              │
│ CLERK, U.S. DISTRICT COURT  │
│ September 18, 2007 (4:10pm) │
│     DISTRICT OF UTAH        │
└─────────────────────────────┘
```

* * * * * * * * *

This matter is before the court on plaintiff Century Indemnity Company's ("Century")

motion for partial summary judgment, in which defendant and cross-claimant Pacific Insurance,

Ltd. ("Pacific") joins in part, and on defendant The Hartford Insurance Company's ("Hartford")

cross-motion for summary judgment.[1]

These motions were previously considered and summary judgment was granted in

Hartford's favor on the basis that Century's and Pacific's claims against Hartford were barred by

the doctrine of res judicata.[2]  On Century's and Pacific's appeal of the district court's decision,

the Tenth Circuit Court of Appeals held that "the district court erred when it concluded that the

state and federal cases involved the same parties or their privies," reversed the grant of summary

---

[1] (Plaintiff Century Indemnity Company's Motion for Partial Summary Judgment (dkt. no. 75) ("Century's Motion for Partial S.J."); Pacific Insurance, Ltd.'s Memorandum in Support; In Response to Plaintiff Century Indemnity Company's Motion for Summary Judgment (dkt. no. 78) ("Pacific's Supporting Memo."); Hartford's Cross Motion for Summary Judgment (dkt. no. 81).)

[2] (Memorandum Decision and Order, Case No. 2:97-cv-925K (dkt. no. 100).)

1

judgment to Hartford on that basis, and remanded the matter to the district court for further proceedings.[3]  This matter was then assigned to this court.[4]

Following the Tenth Circuit's remand, the parties filed supplemental memoranda regarding the remaining issues presented in their cross-motions for summary judgment.[5]  The parties presented their arguments on the remaining issues during hearings on January 10, 2006 and April 18, 2007.[6]  During the hearings, Paul M. Belnap and Andrew D. Wright of Strong & Hanni appeared on behalf of Century, Donald L. Dalton of Dalton & Kelley appeared on behalf of Pacific, and Rebecca L. Hill of Christensen & Jensen, P.C. appeared on behalf of Hartford.[7] Having considered the parties' briefs and arguments, as well as the law and facts relevant to the cross-motions for summary judgment, the court enters the following Memorandum Opinion & Order.

## I.     Background

On January 19, 1994, Voest-Alpine Services and Technologies Corp. ("VAST") and

---

[3]*Century Indem. Co. v. Hanover Ins. Co.*, 417 F.3d 1156, 1159-61 (10th Cir. 2005).

[4](Order and Docket Entry (dkt. no. 135).)

[5](Plaintiff Century Indemnity's Supplemental Brief Regarding Pending Motions for Summary Judgment (dkt. no. 145) ("Century's Supplemental Brief re: S.J."); Supplemental Memorandum in Support of and in Response to Plaintiff's Motion for Partial Summary Judgment (dkt. no. 143) ("Pacific's Supplemental Memo. re: S.J."); Defendant Hartford Insurance Company's Supplemental Briefing Regarding Pending Motions for Summary Judgment (dkt. no. 146) ("Hartford's Supplemental Brief re: S.J."); Memorandum in Reply to Hartford's Supplemental Briefing Regarding Pending Motions for Summary Judgment (dkt. no. 147); Supplemental Reply Memorandum in Support of Plaintiff's Motion for Summary Judgment (dkt. no. 149); Century Indemnity Company's Supplemental Brief Regarding Indemnification and Contribution (dkt. no. 153) ("Century's Supplemental Memo. re: Indemnification"); Pacific's Supplemental Memorandum (Nature of Claims) (dkt. no. 152); Defendant Hartford Insurance Company's Supplemental Briefing Regarding the Nature of Century Indemnity's and Pacific Insurance's Claims (dkt. no. 154).)

[6](Minute Entry, dated January 10, 2006 (dkt. no. 150); Minute Entry, dated April 18, 2007 (dkt. no. 164).)

[7](*Id.*)

2

Mountain States Steel, Inc. ("Mountain States") entered into a lease agreement (the "Lease") regarding VAST's lease of certain real estate and facilities (the "premises") from Mountain States.[8]  The Lease specified certain improvements that Mountain States and VAST were each responsible to complete in order to prepare the premises for VAST's use and occupancy.

During March of 1994, personnel from both Mountain States and VAST were on the premises working on the improvements required by the Lease.  On March 4, 1994, VAST employees Alfonse Ramirez ("Ramirez") and Mark Bakowski ("Bakowski") were seriously injured while performing work necessary to "[e]nclose the west wall," which was one of Mountain States' improvement obligations under the Lease.

After the accident, Ramirez and Bakowski asserted claims against Mountain States, but not VAST.  Relying on a provision in the Lease requiring VAST to insure Mountain States "against any liability arising out of the ownership, use, occupancy or maintenance of the premises," Mountain States tendered defense of Ramirez's and Bakowski's claims to VAST. Hartford, VAST's insurer, refused to defend Mountain States.[9]  After Hartford's refusal, Pacific (Mountain States' primary insurer) defended Mountain States against Ramirez's claim, which was ultimately settled for $1,182,500.  Pacific contributed its $1,000,000 policy limit to the

---

[8]The facts set forth in this section are undisputed and are taken from Century's and Hartford's summary judgment briefs.  (*See* Memorandum in Support of Motion for Partial Summary Judgment (dkt. no. 76) ("Century's Supporting Memo."), at 3-28; Hartford's Memorandum in Opposition to Century's Motion for Partial Summary Judgment and in in Support of its Cross Motion for Summary [sic] (dkt. no. 82) ("Hartford's Supporting Memo."), at 2-20; Century Indemnity's Reply Memorandum in Support of Motion for Partial Summary Judgment and Memorandum in Opposition to Hartford's Motion for Summary Judgment (dkt. no. 91) ("Century's Reply"), at 3-6; Hartford's Reply Memorandum in Support of its Cross Motion for Summary Judgment (dkt. no. 94) ("Hartford's Reply"), at 3.)  Pacific joined in substantial part in Century's motion for partial summary judgment and did not respond to or dispute any of the facts included in this section.  (*See* Pacific's Supporting Memo., *passim*.)

[9]Hanover Insurance Company ("Hanover"), another insurer of VAST at the time of the Ramirez/Bakowski accident, also refused to defend Mountain States.  When this case began, both Hartford and Hanover were named as defendants.  However, Century and Pacific have since settled their claims with Hanover.  (Century's Case Status Report and Request to Resubmit Plaintiff's Motion for Partial Summary Judgment (dkt. no. 132), at 3-4.)

Ramirez settlement, and Century (Mountain States' excess insurer) contributed the remaining $182,500.  Bakowski, unlike Ramirez, filed a lawsuit against Mountain States.[10]  Bakowski ultimately agreed to settle with Mountain States, and Century paid the $503,714 settlement amount.

At the time of the Ramirez/Bakowski accident, VAST was a named insured of two Hartford insurance policies: a Special Multi-Flex Policy, Policy No. 12 UUN BX7348, which included a commercial general liability coverage part (Hartford's "General Liability Policy"), and the Umbrella Policy, Policy No. 12 RHU CI1510 (Hartford's "Umbrella Policy").  Although Hartford's General Liability Policy and Umbrella Policy (collectively the "Policies") were issued to VAST's parent company, Voest-Alpine International Corporation, VAST was designated as a named insured of the Policies by endorsement.  The Policies both included "additional insured" provisions.

Because it appeared to Century and Pacific that the Lease required VAST to insure Mountain States against the liability that resulted from the Ramirez/Bakowski accident, that the Hartford Policies insuring VAST at the time of the accident covered Mountain States as an additional insured, and that Hartford had wrongfully denied coverage, they filed this action seeking to recover from Hartford the amounts they paid on Mountain States' behalf in relation to Ramirez's and Bakowski's claims.[11]

---

[10]Bakowski's complaint against Mountain States was filed in the Fourth Judicial District Court, Utah County, State of Utah.

[11]When this case began, Century and Pacific, who filed the Complaint and the First Amended Complaint in the name of their insured, Mountain States, were both plaintiffs.  (Complaint (dkt. no. 1); First Amended Complaint and Demand for Jury Trial (dkt. no. 17).)  Later, when a dispute arose between Century and Pacific regarding the remedies that the parties were entitled to and how their claims should be prosecuted, Century moved to be substituted as the plaintiff in this action (in place of Mountain States) and for permission to file a second amended

(continued...)

4

Remaining before the court are Century's claims that it is entitled to an order from the court declaring that: (1) Mountain States was an additional insured of the Policies with respect to the Ramirez/Bakowski accident and Hartford was obligated to contribute to the indemnification and defense costs associated with Ramirez's and Bakowski's claims against Mountain States; (2) Hartford's obligation to defend and indemnify Mountain States was primary to Century's obligation; (3) the waiver of subrogation provision in the Lease does not bar Century's claims against Hartford in this matter; (4) Century is entitled to recover from Hartford the attorney's fees and costs it has incurred in this matter as compensatory damages; and (5) to the extent that the court determines that Century and Pacific were obligated to contribute to the defense and settlement of the Ramirez/Bakowski claims, Pacific's obligation was primary to Century's obligation.[12]

Pacific joins in Century's first four claims.[13]  With respect to Century's fifth claim, Pacific disagrees with Century's characterization of Pacific's policy insuring Mountain States as a primary policy.[14]  Pacific argues that the Lease required VAST to procure the Policies and that therefore, despite the language of Pacific's policy, such policy should not be considered a

---

[11](...continued)
complaint that included, among other claims, a claim for declaratory relief establishing the priorities between Century and Pacific.  (Motion for Leave to Substitute Parties and to File Second Amended Complaint (dkt. no. 42); Memorandum in Support of Motion for Leave to Substitute Parties and to File Second Amended Complaint (dkt. no. 43).)  The court granted Century's motion and substituted Century as the plaintiff in this action.  (Order Granting Motion for Leave to Substitute Parties and to File Second Amended Complaint (dkt. no. 54).)  Century filed the Second Amended Complaint in its own name.  (Second Amended Complaint and Demand for Jury Trial (dkt. no. 53) ("Second Amended Complaint").)

[12](Century's Supplemental Brief re: S.J.).

[13](Pacific's Supplemental Memo. re: S.J.)

[14](*Id.* at 2-4.)

primary policy.[15]  Pacific also argues that a genuine issue of fact exists regarding an agreement between Century and Pacific relating to their reimbursements rights and that the court should reserve judgment on Century's claim that it is entitled to receive contribution from Hartford before Pacific receives contribution.[16]

Remaining before the court with respect to Hartford's cross-motion for summary judgment (and related to Century's first claim) is Hartford's claim that it is entitled to an order that, as a matter of law, it was not obligated to indemnify or defend Mountain States with respect to the Ramirez/Bakowski claims.[17]  Hartford argues that under the circumstances of the accident, Mountain States did not qualify as an additional insured of the Hartford Policies.[18]  Hartford additionally argues that Mountain States was not covered as an additional insured under the General Liability Policy because of that policy's structural alteration exclusion.[19] Finally, Hartford argues that even if the court determines that Mountain States qualified as an additional insured under the Policies, Century's and Pacific's claims are barred in this action by the waiver of subrogation provision in paragraph 6.4 of the Lease.[20]

---

[15](*Id.*)

[16](*Id.* at 4-5.)

[17](Hartford's Supplemental Brief re: S.J., at 4-12.)

[18](*Id.*)

[19](*Id.* at 11-12.)

[20](*Id.* at 12-16.)

## II.     ANALYSIS

### A.     Whether Hartford Had a Duty to Defend and Indemnify Mountain States with Respect to Ramirez's and Bakowski's Claims

An issue raised by the parties' cross-motions for summary judgment is whether Hartford

had a duty arising under its Policies to participate in the defense and indemnification of

Mountain States with respect to Ramirez's and Bakowski's claims.  The duty to defend is a

contractual duty, which is determined by comparing the language of the applicable insurance

policy or policies with the allegations in the complaint.[21]  Like the duty to defend, the duty to

indemnify is also a contractual one, and accordingly, the question is governed by the terms of the

relevant insurance policy or policies.[22]

In this case, none of the parties have made any distinction between the duty to defend and

the duty to indemnify or have specifically analyzed the questions of Hartford's duty to defend or

indemnify.  Instead, the parties apparently agree that *if* Mountain States qualified as an

additional insured under the Policies with respect to the Ramirez/Bakowski accident, then

Hartford had the duty to participate in the indemnification and defense of the claims resulting

from the accident.[23]  Accordingly, like the parties, the court has limited its analysis of whether

---

[21]*Benjamin v. Amica Mut. Ins. Co.*, 140 P.3d 1210, 1214 (Utah 2006).

[22]*Id.* at 1216.

[23]For instance, although Hartford generally refers to the duty to defend and discusses the allegations of Bakowski's complaint in its supporting memorandum (Hartford's Supporting Memo., at 34-35), at no point does Hartford specifically address the question of its duty to indemnify.  Instead, Hartford more generally argues that Mountain States did not qualify as an additional insured and that therefore Hartford did not have a duty to contribute to the defense or indemnification of Mountain States for the claims asserted by Ramirez and Bakowski.  *(See, e.g.* Hartford's Cross Motion for Summary Judgment ("The Hartford owes no coverage to Mountain States, and therefore owes no duty to contribute to the defense and/or indemnification of Mountain States for personal injury claims made by Messrs. Ramirez and Bakowski."); Hartford's Supplemental Brief re: S.J., at 5 ("In this case to determine whether Century and Pacific can receive contribution for defense and indemnification they paid to settle the personal injury claims against Mountain States, the Court must determine whether Hartford's Additional Insured Provisions provide

(continued...)

Hartford had a duty to participate in the indemnification and defense of Mountain States to the question of whether Mountain States qualified as an additional insured under the Hartford Policies.

### 1.    The Hartford Policies' Additional Insured Provisions

While the parties agree that, unlike VAST, Mountain States was not a named insured of the Hartford Policies, the parties dispute whether Mountain States qualified as an additional insured of the Policies under the circumstances of the Ramirez/Bakowski accident.

In order to determine whether Mountain States qualified as an additional insured with respect to Ramirez's and Bakowski's claims, the court must construe the pertinent language of the Policies.  Because the court is exercising diversity jurisdiction, it "must apply the substantive law of the forum state," in this case Utah.[24]  The court "must ascertain and apply Utah law such that [it] reach[es] the same result that the Utah courts would reach."[25]

An insurance policy, which "'is merely a contract between the insured and the insurer'" is interpreted in the same way as other contracts.[26]  The court should first look "to the contract's four corners to determine the parties' intentions, which are controlling."[27]  If the language of the contract is not ambiguous, "then a court does not resort to extrinsic evidence of the contract's

---

[23](...continued)
coverage to Mountain States for the activities and work it was conducting when the accident occurred and for which it was sued.").

[24]*Blanke v. Alexander*, 152 F.3d 1224, 1228 (10th Cir. 1998).

[25]*Utah Power & Light Co. v. Fed. Ins. Co.*, 983 F.2d 1549, 1553 (10th Cir. 1993).

[26]*Benjamin*, 140 P.3d at 1213 (quoting *Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272, 1274 (Utah 1993)).

[27]*Bakowski v. Mountain States Steel, Inc.*, 52 P.3d 1179, 1184 (Utah 2002).

meaning, and a court determines the parties' intentions from the plain meaning of the contractual

language as a matter of law."[28]

> The Hartford General Liability Policy provided:

>> We will pay those sums that the insured becomes legally obligated
>> to pay as damages because of "bodily injury" or "property damage"
>> to which this insurance applies.  We will have the right and duty
>> to defend any "suit" seeking those damages.  We may at our discretion
>> investigate any "occurrence" and settle any claim or "suit" that may result.[29]

The Hartford Umbrella Policy similarly provided:

>> We will pay those sums that the "insured" must legally pay as
>> "damages" in excess of the "underlying insurance," or of the
>> "self-insured retention" when no "underlying insurance" applies,
>> because of "bodily injury," "property damage," "personal injury"
>> or "advertising injury" to which this insurance applies caused by
>> an "occurrence."[30]

The word "insured" was defined under both the General Liability Policy and the Umbrella Policy

as meaning any person or organization qualifying as an insured in the applicable "WHO IS AN

INSURED" sections of the Policies.[31]  An additional insured endorsement to the General

Liability Policy further provided that:

>> a.  WHO IS AN INSURED (SECTION II) is amended to include
>> as an insured any person or organization with whom you agreed,
>> because of a written contract or agreement or permit, to provide
>> insurance such as is afforded under this policy, but only with respect

---

[28]*Id.*

[29](Declaration of Rebecca L. Hill Regarding Insurance Policies Issued by Hartford Fire and Hartford
Casualty Insurance Companies (dkt. no. 161) ("Hill Decl."), Ex. A, CG 00 01 11 88, at 1.)

[30](*Id.*, Ex. B, XL 00 03 03 90, at 1.)

[31](*Id.*, Ex. A, CG 00 01 11 88, at 1; Ex. B, XL 00 03 03 90, at 10.)

to your operations, "your work" or facilities owned or used by you.[32]

Hartford's Umbrella Policy similarly provided that "[e]ach of the following is also an 'insured:'"

> 2.  Any person or organization with whom you agreed, because of a written contract, agreement or permit, to provide insurance such as is afforded under this policy, but only with respect to your operations, "your work" or facilities owned or used by you.[33]

The terms "you" and "your" referred to named insureds of the Policies, including VAST.[34]

The court, like other courts that have considered identical or nearly identical language, determines that the language of the additional insured provisions is not ambiguous.[35]  Under the plain meaning of the additional insured language in the Hartford Policies, if VAST was obligated by written contract or agreement to provide Mountain States with the type of insurance provided by the Hartford Policies, Mountain States would qualify as an additional insured "but only with respect to [VAST's] operations, [VAST's] 'work' or facilities owned or used by [VAST]."

In paragraph 6.1 of the Lease, VAST and Mountain States agreed that:

> [VAST] shall, at [VAST's] expense, obtain and keep in force during the term of this lease a policy of combined single limit, bodily injury and property damage public liability insurance insuring [Mountain States] and [VAST] against any liability arising out of the ownership, use, occupancy or maintenance of the premises and all areas appurtenant thereto.[36]

---

[32](*Id.*, Ex. A, HC 26 06 11 91.)

[33](*Id.*, Ex. B, XL 00 03 03 90, at 4.)

[34](*Id.*, Ex. A, CG 00 01 11 88, at 1; Ex. B, XL 00 03 03 90, at 1.)

[35]*See Utah Power & Light Co.*, 983 F.2d at 1553-54 (explaining the "plain meaning" of an additional insured provision with language substantially similar to that in the Policies); *Hartford Cas. Ins. Co. v. Travelers Indem. Co.*, 2 Cal. Rptr. 3d 18, 24 (Cal. Ct. App. 2003) (construing identical language and determining that "the meaning of the Hartford policy language begins and ends with the plain meaning of the unambiguous words used").

[36](Hartford's Supporting Memo., at Ex. 1 (Lease).)

10

In an attempt to narrow the scope of VAST's broadly worded insurance obligation under the Lease, Hartford claims that paragraph 6.1 required VAST to insure Mountain States only for liability arising out of VAST's ownership, use, occupancy or maintenance of the premises.[37]  The clear language of paragraph 6.1, however, requires VAST to obtain bodily injury and property damage liability insurance insuring itself and Mountain States against "*any liability* arising out of the ownership, use, occupancy or maintenance of the premises."  Paragraph 6.1 does not limit VAST's obligation to providing coverage for liability arising only from its own ownership, use, occupancy or maintenance of the premises.  And while Hartford argues that VAST did not agree to insure Mountain States for liability stemming from Mountain States' own improvement obligations, Hartford has not pointed to any language in the Lease that limited VAST's insurance obligation set forth in paragraph 6.1.[38]

VAST, a named insured of the Hartford Policies, was obligated under the Lease to provide Mountain States with bodily injury and property damage liability coverage – precisely the type of liability insurance provided by the Hartford Policies.  Thus, VAST was contractually obligated to provide Mountain States with the type of insurance provided by the Hartford Policies, and the first requirement for Mountain States to be considered an additional insured under the Hartford Policies is met.

Next, the court must consider whether Mountain States qualified as an additional insured

---

[37](Hartford's Supplemental Brief re: S.J., at 6-11.)

[38]Hartford argues that the provisions in the Work Letter of the Lease providing that VAST was responsible for obtaining insurance for its own improvement obligations shows that the parties agreed that Mountain States was also responsible to procure insurance for liability relating to its improvements.  (*See* Hartford's Supplemental Brief re: S.J., at 8-9.)  Because Hartford has failed to point to any language in the Lease indicating that Mountain States was responsible for procuring insurance for liability arising out of its improvement obligations, the court is not persuaded by Hartford's position.

with respect to Ramirez's and Bakowski's claims under the language in the Policies providing that the party with whom VAST agreed to provide insurance, in this case Mountain States, will be covered as an insured, "but only with respect to [VAST's] operations, [VAST's] 'work' or facilities owned or used by [VAST]."

The parties agree that the following facts describe the circumstances of the Ramirez/Bakowski accident. During March of 1994, personnel from both Mountain States and VAST were on the leased premises, working on the improvements required by the Lease. At that time, work was being done in order to "[e]nclose the west wall," which the Work Letter attached to the Lease specified was to be completed by Mountain States by January 31, 1994.[39] On March 4, 1994, VAST volunteered certain of its employees, including Ramirez and Bakowski, to assist Mountain States perform the work necessary to enclose the west wall.[40] Ramirez and Bakowski, who were in the process of taking down a wood wall that was going to be replaced with a demising wall, were hoisted in a man basket by a full hydraulic crane that was owned by Mountain States and was being operated by Craig Evans ("Evans"), an employee of Mountain States. When Evans, at the signal of a VAST employee working on the project, extended the telescopic boom on the crane, the cable snapped, the man basket fell to the ground, and Ramirez and Bakowski were seriously injured.

---

[39]The Work Letter to the Lease provided that "'Lessor's Improvements' shall mean the material, item, or specification described in Attachment '1'. Lessor agrees to furnish, in accordance with the Plan, the improvements described in Attachment '1' and Attachment '3'." (Hartford's Supporting Memo., Ex. 1 (Lease), at Ex. C (Work Letter).) "Attachment '1' to the Work Letter was entitled "Lessor's Improvements and Completion Schedule" and provided: "The North Shop improvements will include the following work provided by Lessor (Lessor's Improvements) to be completed by the dates indicated." (*Id.*) Under item number three, Mountain States was to "[e]nclose the west wall" by "January 31, 1994." (*Id.*)

[40]According to Hartford, the VAST employees were volunteered in order "to help out and speed up the process of getting the west wall done." (Hartford's Supporting Memo., at 13 ¶ 9.)

In support of its argument that the accident arose out of facilities being used by VAST or out of VAST's work or operations, Century points to the fact that the Lease commenced on March 1, 1994, before the Ramirez/Bakowski accident, and to the fact that several VAST employees were working on the wall when the accident occurred.[41]  Century further argues that the work being done at the time of the accident was being done on VAST's behalf and therefore qualified as VAST's work under the Policies, which define "your work" as including "[w]ork or operations performed . . . on your behalf."

 Hartford, on the other hand, argues that because enclosing the west wall was Mountain States' obligation under the Lease, the accident was caused by Mountain States' operations, work, and use of the premises, not VAST's.  Relying on the language in the Lease providing that the purpose of Mountain States' improvements was "to prepare the Premises for [VAST's] use and occupance" and that "[t]he premises shall be used and occupied for steel mill equipment fabrication, maintenance, repair and related purposes," Hartford also argues that because the accident occurred before Mountain States' improvements were completed and before VAST was using the premises for steel mill equipment fabrication, VAST was not using or occupying the premises.  For these reasons, Hartford claims that the Ramirez/Bakowski accident did not involve VAST's operations, work, or use of the premises and that accordingly, Hartford was not obligated to provide coverage to Mountain States.

Hartford's arguments ignore paragraph 2.3 of the Lease, which provided in part:

---

[41]Century suggests that "the issue of whether the Ramirez/Bakowski accident arose out of VAST's work, operation or use of the facilities leased to it has been settled by the State court." (Century's Reply, at 9.)  *Bakowski v. Mountain States Steel, Inc.*, 52 P.3d 1179 (Utah 2002), however, indicates that although the Utah district court and the Utah Supreme Court analyzed certain provisions of the Lease, their decisions were not based on an analysis of the Hartford Policies.  Thus, the court does not agree with Century that this issue has been decided by the State courts.

> The parties acknowledge that time is of the essence of this lease, particularly with respect to completion of improvements and commencement of occupancy. Lessor agrees to make the improvements ("Lessor Improvements") set forth in Exhibit "C" and its attachments pursuant to the schedule for completion set forth therein (["]Completion Schedule"). *If Lessor fails to comply in any respect with the Completion Schedule, Lessee may, at its sole option, perform or cause to be performed any work or service and purchase or acquire any materials necessary to keep the Lessor Improvements on schedule.*[42]

Under this provision, the parties contemplated that Mountain States' improvements may not be completed as scheduled. Apparently recognizing VAST's desire to commence occupancy of the premises, the parties gave VAST the option to perform "work" on Mountain States' improvements.

By volunteering the services of Ramirez, Bakowski, and other of its employees to assist Mountain States with the west wall, VAST exercised its right under the Lease to "perform or cause to be performed any work or service" necessary to keep Mountain States' improvements moving forward. Given the plain meaning of paragraph 2.3 of the Lease and the circumstances surrounding the accident, the court is not persuaded by Hartford's argument that because enclosing the west wall was Mountain States' obligation, all work done in performing that task – including construction work that VAST volunteered its employees to perform – was Mountain States' work, not VAST's.

When Ramirez and Bakowski were injured, they were working as VAST employees on a task that VAST directed them to perform. These facts establish that at a minimum, the accident that gave rise to Ramirez's and Bakowski's claims against Mountain States involved "[VAST's]

---

[42](Hartford's Supporting Memo., Ex. 1 (Lease), at ¶ 2.3 (emphasis added).)

work," which is broadly defined in the Policies as including "[w]ork or operations performed by

[VAST] . . . ."[43]

The court's conclusion is not changed by Hartford's position regarding the meaning of

the "but only with respect to" language in the additional insured provisions.  According to

Hartford,

> Courts around the nation, including the Tenth Circuit, have
> construed additional insured provisions similar to the one found
> in the Hartford policies and generally recognize and apply the
> coverage provisions as limiting coverage to occurrences involving
> a named insureds' conduct and to claims of vicarious liability derived
> from conduct of the named insured.[44]

---

[43] The Policies define "your work" as meaning:

>     a.  Work or operations performed by you or on your behalf; and
>     b.  Materials, parts or equipment furnished in connection with such
>     work or operations.
>     "Your work" includes:
>     a.  Warranties or representations made at any time with respect to
>     the fitness, quality, durability, performance or use of "your work;" and
>     b.  The providing of or failure to provide warnings or instructions.

(Hill Decl., Ex. A, CG 00 01 11 88, at 12; *see id.*, Ex. B, XL 00 03 03 90, at 12.)

[44] (Hartford's Supporting Memo., at 29.) In making its "vicarious liability" argument, Hartford ignores a
number of cases that construe language that is identical or nearly identical to the language at issue in the Hartford
Policies, some of which will be discussed below, and instead cites to cases involving policies with substantially
different language than the language at issue in this case.  (*Id.* at 29-30 (citing *National Union Fire Ins. Co.  v.
Nationwide Ins. Co.*, 82 Cal. Rptr. 2d 16, 16 (Cal. Ct. App. 1999) (construing an additional insured endorsement
providing that "Who Is an Insured (Section II) is amended to include [the general contractor] as an insured . . . [but]
only to the extent that [it] is *held liable* for [the subcontractor's] acts or omissions arising out of and in the course of
operations performed for [the general contractor] by [the subcontractor] . . . " (emphasis added)); *Liberty Mutual Ins.
Co. v. Capeletti Bros., Inc.*, 699 So. 2d 736, 737 (Fla. Dist. Ct. App. 1997) (interpreting an additional insured
endorsement that provided coverage to an additional insured "but only with respect to  *liability arising out of*" the
named insured's work for the additional insured" (emphasis added)); and *Village of Hoffman Estates v. Cincinnati
Ins. Co.*, 670 N.E.2d 874, 875 (Ill. App. Ct. 1996) (involving an additional insured provision providing that "The
'Persons Insured' provision is amended to include as an INSURED the person or organization named above but only
with respect to *liability incurred* solely as a result of some act or omission of the NAMED INSURED" (emphasis
added))).  The policies at issue in the cases cited by Hartford define the coverage available to additional insureds in
terms of liability, unlike the additional insured provisions in the Policies.

Hartford's reliance on *Utah Power & Light Co.* in support of its position is also misplaced.  Nowhere in that
case did the Tenth Circuit determine that coverage was limited to "occurrences involving a named insureds'
conduct" or "to claims of vicarious liability derived from conduct of the named insured," as Hartford claims.

(continued...)

15

Hartford also claims that the "but only with respect to" phrase "plainly and unambiguously" limits coverage for additional insureds "to occurrences and accidents *solely or exclusively* concerning the operations, work or facilities owned or used by VAST."[45]  Hartford argues that because the accident involved a Mountain States employee and Mountain States' equipment, and because Ramirez and Bakowski did not assert claims against VAST, the accident did not occur solely and exclusively as a result of VAST's operations, work, or use of facilities and the "but only with respect to" condition for coverage was not met.[46]

The plain meaning of the additional insured provisions does not support Hartford's construction of the phrase "but only with respect to."  There is nothing in the additional insured language that indicates that coverage is triggered only if the named insured is named as a defendant in an underlying lawsuit or is alleged to have been negligent.  There is also no language that limits coverage of an additional insured to accidents, injuries, or occurrences solely attributable to the named insured's conduct or negligence.  Similarly, there is no language that excludes coverage for liability arising from the conduct of the additional insured.  Had Hartford intended the narrow construction that it proposes in this case, it should have clearly

---

[44](...continued)
Instead, the court interpreted the phrase "but only with respect" as meaning that the incident that gave rise to the claim "must have involved either operations by or on behalf of [the named insured], or facilities of or used by [the named insured]."  *Utah Power & Light Co.*, 983 F.2d at 1554.  The court concluded that the "but only with respect to" requirement was satisfied where "the fire which gave rise to the [underlying] action occurred at the Wilberg Mine, a facility used by [the named insured] in the course of its mining operation."  *Utah Power & Light Co.*, 983 F.2d at 1554.

[45](Hartford's Reply, at 6, 8-9 (emphasis added); *see* Hartford's Supporting Memo., at 35 ("[T]he Hartford Policies clearly and unambiguously state that additional insured coverage is limited to occurrences only involving a named insured's operations, work or facilities which they own or use.  The named insured in the present case is VAST and therefore the accident must involve or arise only with respect to VAST's operation, VAST's work or facilities used by VAST in order to trigger coverage.").)

[46](Hartford's Supporting Memo., at 32-34.)

16

drafted such limitations in the Policies.  It did not do so.[47]

Instead, the language of the Policies plainly provides coverage for an additional insured if the event giving rise to the claim against the additional insured simply involves the named insured's operations, work, or use or ownership of the facilities.[48]

While the court has not found any Utah case exactly on point, similar cases from other jurisdictions provide support for the court's conclusion.[49]  For example, in *Hartford Cas. Ins. Co. v. Travelers Indem. Co.*, 2 Cal. Rptr. 3d 18 (Cal. Ct. App. 2003), the California Court of Appeals considered the meaning of an additional insured endorsement with identical language and with an identical definition of "your work" as that included in the additional insured provisions in the Policies in this case.[50]  In that case, the lessee, who was a named insured to a Hartford Casualty Insurance Company ("Hartford Casualty") policy, was required under its lease to name the lessor

---

[47]In fact, contrary to Hartford's position in this case, the definition of "your work" that Hartford included in the Policies, which includes "[w]ork or operations performed . . . on [the named insured's] behalf," plainly contemplates coverage in situations where the "work" is being performed by someone other than the named insured. (*See* Hill Decl., Ex. A, CG 00 01 11 88, at 12; *see id.*, Ex. B, XL 00 03 03 90, at 12.)

[48]*See Utah Power & Light Co.*, 983 F.2d at 1553-54.

[49]The court notes that although the parties cite to and rely on cases outside of Utah involving the interpretation of policies that included substantially and materially different language than the additional insured language at issue in this case, none of the parties cite to or rely on any of the several cases wherein courts have interpreted language that is identical or nearly identical to the language at issue in this case.

[50]The court described the endorsement to the policy as follows:

> the definition of an "insured" included "any person or organization with whom you agreed, because of a written contract or agreement or permit, to provide insurance such as is afforded under this policy, but only with respect to your operation, 'your work' or facilities owned or used by you."  "You," in the Hartford policy, refers to [the lessee].  The policy further provides the following definitions: "'Your work' means: [¶] a. Work or operations performed by you or on your behalf; and [¶] b. Materials, parts or equipment furnished in connection with such work or operations.  [¶] 'Your work' includes: [¶] a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work'; and [¶] b.  The providing of or failure to provide warnings or instructions.

*Hartford Cas. Ins. Co.*, 2 Cal. Rptr. 3d at 21.

as an additional insured.[51]  After an employee of the lessee fell and died on the leased premises,

the employee's parents filed a lawsuit against the lessor.[52]  Like the arguments made by Hartford

in this case, Hartford Casualty argued that the lessor was not covered by the lessee's policy

because the "but only with respect to" language limited coverage to liability directly caused by

the lessee's operations or use of the premises.[53]  Hartford Casualty also argued, like Hartford

does in this case, that because the complaint filed by the employee's parents was directed only at

the lessor, its duty to defend never arose.[54]

The California court rejected Hartford Casualty's arguments and determined that

"nothing in the meaning of 'only with respect to' hints at a requirement of direct causation.

Looking at the plain meaning of the questioned phrases, we find definitions indicating that 'only

with respect to' merely indicates some relationship."[55]  The court also indicated:

> We find nothing in the reading of the Hartford policy's broad
> inclusion of liabilities related to [the lessee's] presence as [the
> lessor's] tenant to support the conclusion that [the lessee] must
> directly have caused the injury in order for Hartford's coverage to
> be triggered.  If Hartford had intended that narrow construction, it
> could have drafted clear limitations in its policy.[56]

The California Court of Appeals concluded that the trial court correctly determined that Hartford

Casualty's coverage of the lessor was not limited to liability directly caused by the lessee and

---

[51]*Id.* at 20-21.

[52]*Id.* at 19-20.

[53]*Id.* at 22-25.

[54]*Id.* at 22.

[55]*Id.* at 25.

[56]*Id.*

that the insurance policy covered the lessor as an additional insured with respect to the claims asserted against the lessor as a result of the employee's death.[57]

The case of *J.A. Jones Constr. Co. v. Hartford Fire Ins. Co.*, 645 N.E.2d 980 (Ill. App. Ct. 1995), is also instructive. In that case, PPG Industries, Inc. ("PPG"), a subcontractor, was required to indemnify J.A. Jones Construction Co. ("Jones"), a general contractor, "for third party bodily injury and property damage claims 'arising out of PPG's work.'"[58] Accordingly, PPG's insurer, Hartford Fire Insurance Company ("Hartford Fire"), named Jones as an additional insured to a policy containing additional insured language nearly identical to the language at issue in this case.[59]

After John McGovern, an employee of PPG, was injured while working at the construction site, he filed a complaint against Jones for negligence.[60] McGovern did not allege that PPG was negligent and did not assert any claims against PPG.[61]

After considering the meaning of the language in the additional insured endorsement and

---

[57]*Id.* at 19, 25.

[58]*J.A. Jones*, 645 N.E.2d at 981.

[59]The policy at issue in the *J.A. Jones* case, like the Policies in this case, provided:

> "WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization with whom you have agreed, because of a written contract or agreement, to provide insurance such as is afforded under this policy, but only with respect to your operations, 'your work' or facilities owned or used by you."

*Id.* at 982.

[60]*Id.*

[61]*Id.* Jones and its insurer, Aetna, tendered defense of McGovern's claim to Hartford Fire, PPG's insurer, but Hartford Fire refused coverage. *Id.* As a result, Aetna defended Jones in McGovern's action and thereafter filed a declaratory judgment action, seeking a declaration that Hartford Fire should have provided coverage to Jones with respect to McGovern's claim. *Id.* at 981-82.

after finding that "McGovern, when injured, was an employee of PPG performing work PPG had contracted to do," the Appellate Court of Illinois affirmed the lower court's ruling that Hartford Fire, as PPG's insurer, owed a duty to defend Jones with respect to McGovern's claims.[62]  The court "specifically rejected the argument by . . . Hartford [Fire], that the additional insured endorsement limited coverage to injuries attributable to [PPG's] negligence."[63]  In other words, the court rejected Hartford Fire's argument, like Hartford's suggestion in this case, that the "with respect to" language limited coverage of additional insureds to cases in which vicarious liability is alleged against the additional insured based on the acts of the named insured.[64]  Moreover, the fact that the injured employee did not sue his immediate employer, PPG, and the fact that the employee's allegations were premised on the alleged negligence of Jones did not relieve Hartford Fire from the obligation of defending Jones.[65]

*Hartford Cas. Ins. Co. v. Travelers Indem. Co., J.A. Jones Constr. Co. v. Hartford Fire Ins. Co.*, and other cases,[66] support the court's conclusion that because Mountain States was insured under the Policies "with respect to" VAST's work, and because Ramirez and Bakowski were VAST employees, performing work that VAST volunteered them to perform at the time of the accident, Mountain States was an additional insured with respect to the Ramirez/Bakowski

---

[62]*Id.* at 981-83.

[63]*St. Paul Fire & Marine Ins. Co. v. Hanover Ins. Co.*, No. 5:99-CV-164-BR-3, 2000 U.S. Dist. LEXIS 21792, **18-19 (E.D.N.C. Sept. 18, 2000) (citing *J.A. Jones*, 645 N.E.2d at 982).

[64]*See id.*; *J.A. Jones*, 645 N.E.2d at 982.

[65]*J.A. Jones*, 645 N.E.2d at 982; *see St. Paul Fire & Marine Ins. Co.*, 200 U.S. Dist. LEXIS, at *19.

[66]*See Saavedra v. Murphy Oil U.S.A., Inc.*, 930 F.2d 1104 (5th Cir. 1991); *United States Fire Ins. Co. v. Aetna Life & Cas.*, 684 N.E.2d 956 (Ill. App. Ct. 1997); *St. Paul Fire & Marine Ins. Co.*, 2000 U.S. Dist LEXIS 21792, at **20-21.

accident and should have been covered by the Hartford Policies.

## 2.        The Structural Alteration Exclusion

Hartford argues that even if Mountain States qualified as an additional insured under the

Policies, Mountain States was not entitled to primary coverage under the Hartford General

Liability Policy because of the following exclusion in the additional insured endorsement:

> e.  When
>     (1) Owners or other interests from whom land has been leased; or
>     (2) Managers or lessors of premises;
>     Becomes [sic] an insured under [the additional insured endorsement],
>     the following additional exclusions apply:
>     . . .
>     (ii) Structural alterations, new construction or demolition operations
>     performed by or on behalf of the manager or lessor.[67]

Under Utah law, "[i]nsurers 'may exclude from coverage certain losses by using

language which clearly and unmistakably communicates to the insured the specific

circumstances under which the expected coverage will not be provided.'"[68] Insurance exclusions

"are not construed automatically against the insurer, rather, such a construction applies only

when, as for any other policy provision, the language of the exclusion is ambiguous."[69]

Language of an exclusion is ambiguous if it is "unclear, omits terms, or is capable of two or

more plausible meanings."[70]

In this case, the parties have not presented contrary, tenable interpretations of what the

language in the exclusion means.  Instead, Century and Hartford apparently agree that the

---

[67](Hill Decl., Ex. A., HC 26 06 11 91.)

[68]*Utah Farm Bureau Ins. Co. v. Crook*, 980 P.2d 685, 686 (Utah 1999) (quoting *Alf*, 850 P.2d at 275).

[69]*S.W. Energy Corp. v. Continental Ins. Co.*, 974 P.2d 1239, 1242 (Utah 1999).

[70]*Id.* (stating that policy terms "'are not necessarily ambiguous simply because one party seeks to endow them with a different interpretation according to his or her own interests'" (quoting *Alf*, 850 P.2d at 1274-75)).

exclusion requires an alteration "that affects a vital and substantial portion of a thing, that

changes its characteristic appearance, the fundamental purpose of its erection, and the uses

contemplated," that "is extraordinary in scope or expenditure," and that denotes a "substantial"

"change or substitution."[71]

_____

[71](Century's Reply, at 16; Hartford's Reply, at 14-15.)  In Century's Reply, Century argues:

> Courts which have considered structural alteration exclusions have defined
> such exclusions as follows:
>
>> one that affects a vital and substantial portion of a thing, that changes
>> its characteristic appearance, the fundamental purpose of its erection,
>> and the uses contemplated [and] . . . is extraordinary in scope or expenditure.
>
> BLACKS LAW DICTIONARY 1276 (5th ed. 1979); *see also Hardware Mut.*
> *Casualty Co. v. Hilderbrandt*, 119 F.2d 291, 300 (10th Cir. 1941) (noting that a
> structural alteration of a building is one that and [sic] changes or substitutes its
> function or appearance in a substantial way).

(Century's Reply, at 16.)  In Hartford's Reply, Hartford sets forth the same definitions of "structural alteration"
relied on by Century.  (Hartford's Reply, at 14-15.)  Hartford then argues that "[a]pplying these definitions of
'structural alteration' to the undisputed evidence regarding the accident demonstrates that the work which was being
done was structural alterations [sic] and is precluded from coverage."  (*Id.* at 15.)
    Other courts that have interpreted similar exclusions or language have come to similar conclusions
regarding the meaning of a "structural alteration."  *See Hawkeye Cas. Co. v. Frazier*, 183 F.2d 465, 467 (10th Cir.
1950) ("A structural alteration of a building . . . is one which affects some portion thereof in a vital and substantial
manner, and changes its characteristic appearance.  It denotes a change or substitution in a substantial particular.");
*Hardware Mut. Cas. Co. v. Hilderbrandt*, 119 F.2d 291, 300 (10th Cir. 1940) (same); *see also Hartford Cas. Ins. Co.*
*v. Ribellino Family Ltd. P'ship*, No. 04 CV 1594 (SJ), 2005 U.S. Dist. LEXIS 8186, *12 (E.D.N.Y. April 26, 2005)
("New York state courts have held that '[a] structural change or alteration is such a change as affects a vital and
substantial portion of the premises, as changes its characteristic appearance, the fundamental purpose of its erection,
or the uses contemplated, or, a change of such a nature as affects the very realty itself – extraordinary in scope and
effect, or unusual in expenditure.'" (quoting *Garrow v. Smith*, 603 N.Y.S.2d 635 (N.Y.A.D. 1993))); *Robert*
*Hawthorne, Inc. v. Liberty Mutual Ins. Co.*, 150 F. Supp. 829, 835 n.9 (E.D. Pa. 1957) ("Structural change has been
defined as 'such a change as to affect a vital and substantial portion of the premises, as would change its
characteristic appearance, the fundamental purpose of its erection, or the uses contemplated, or a change of such a
nature as would affect the very realty itself – extraordinary in scope and effect, or unusual in expenditure.'");
*Justine Realty Co. v. American Can Co.*, 456 N.E.2d 871, 873 (Ill. App. Ct. 1983) (defining a "structural alteration"
as "'[o]ne that affects a vital and substantial portion of a thing; that changes its characteristic appearance, the
fundamental purpose of its erection, and the uses contemplated [and] *** is extraordinary in scope and effect, or
unusual in expenditure.'" (citing *Black's Law Dictionary* 1276 (5th ed. 1979))).
    Besides arguing that the exclusion in the General Liability Policy was not met because the work being done
by Ramirez and Bakowski did not substantially change the function or appearance of the building, Century
alternatively argues that the exclusion is ambiguous.  The terms in the exclusion are not defined in the policy, and
there is no Utah case interpreting the language used in the exclusion.  However, Century has not sufficiently
established that the terms in the exclusion are unclear or that the exclusion omits necessary terms.  Given that the
parties in this case agree on the meaning of "structural alteration," that other cases interpreting the same or similar

(continued...)

Applying this definition of "structural alteration," the court determines that the exclusion does not preclude coverage for the Ramirez/Bakowski accident.[72]  The parties agree that when the accident occurred, Ramirez and Bakowski were taking down an existing wood wall that was going to be replaced by another wall.  According to the facts presented by the parties, the west wall was to be constructed to enclose certain space in the premises and to make the premises more useful for VAST while it occupied the building.  Hartford has not set forth any specific facts that show that Ramirez's and Bakowski's work at the time of the accident changed a "vital and substantial portion" of the premises, changed the premises' "characteristic appearance," or was extraordinary in scope or expenditure.

In support of its position that Ramirez's and Bakowski's work fell under the exclusion in the General Liability Policy, Hartford relies on various provisions of the Lease.  For instance, Hartford argues that Mountain States was responsible to complete a number of improvements and that considering those improvements together shows "that the amount and nature of work identified affected vital and substantial portions of Mountain States' building and were

---

[71](...continued)
language have come to the same conclusion without finding the language ambiguous, and that Century has not cited any case where a court has interpreted substantially similar language and found such language to be ambiguous, the court is not persuaded that the exclusion is ambiguous.

[72]None of the parties discussed the meaning of the terms "new construction" or "demolition operations." Although Hartford summarily claimed that "enclosure of the west wall plainly constitutes a 'structural alteration' and/or 'new construction' to the Lease Premises," (Hartford's Supporting Memo., at 36), and that "[t]he facts of the accident show that structural alteration and demolition was taking place," (Hartford's Reply, at 18), Hartford failed to analyze in any meaningful way what "new construction" or "demolition" mean and whether the work being done when the accident occurred constituted either "new construction" or "demolition."  Instead, Hartford, as well as Century, focused on whether the work being done by Ramirez and Bakowski met their agreed upon definition of "structural alteration."  Since neither Hartford nor Century have analyzed whether the accident involved "demolition" or "new construction," the court need not consider that question.

extraordinary in scope."[73]  Hartford, however, does not set forth any evidence that Ramirez and Bakowski worked on any of the listed improvements besides enclosing the west wall.  Hartford similarly argues that paragraph 3.2 of the Lease, which provided that the total cost of Mountain States's improvements could amount to no more than $212,050, and paragraph 8 in the Work Letter to the Lease, which provided that Mountain States "shall cause to be prepared the final architectural, mechanical . . . electrical, plumbing, structural plans and specifications ("Working Drawings") necessary to complete" certain improvements, including enclosing the west wall, are evidence of "the magnitude of change which some of the improvements were causing to the leased premises" and show that Mountain States' improvements were "extraordinary in scope and expenditure."[74]  Hartford, however, has not provided any evidence of actual work plans or actual expenditures.  Instead, Hartford has only provided general and limited statements of fact regarding the work that was occurring at the time of the accident.[75]

Based on the facts uncontroverted by the parties, as set forth in their cross-motions for summary judgment, the court determines that the work being done at the time of the Ramirez/Bakowski accident did not rise to the level of being a "structural alteration." Accordingly, the structural alteration exclusion does not preclude coverage of Mountain States as an additional insured under the General Liability Policy.

Because, as discussed above, Mountain States qualified as an additional insured under the Policies with respect to the Ramirez/Bakowski accident, the court determines as a matter of law

---

[73](Hartford's Reply, at 16.)

[74](Hartford's Reply, at 16-17.)

[75](*See* Hartford's Supporting Memo., at 12-14 (describing "The Accident").)

that Hartford had the duty to participate in the defense and indemnification of the claims asserted

against Mountain States in relation to the accident.

### B.   Whether the Waiver of Subrogation Provision Bars Century's and Pacific's Claims Against Hartford

Another issue raised by the pending motions for summary judgment is whether the

waiver of subrogation provision in paragraph 6.4 of the Lease between VAST and Mountain

States bars Century's and Pacific's contribution claims against Hartford.  Paragraph 6.4 of the

Lease provided:

> [VAST] and [Mountain States] each waive any and all rights
> of recovery against the other or against the officers, employees,
> agents and representatives of the other, for loss of or damage to
> such waiving party or its property or the property of others under
> its control where such loss or damage is insured against under any
> insurance policy in force at the time of such loss or damage. [VAST]
> and [Mountain States] shall, upon obtaining the policies of insurance
> required hereunder, give notice to the insurance carrier or carriers that
> the foregoing mutual waiver of subrogation is contained in this
> lease, and shall obtain endorsements to the respective policies
> recognizing the waiver.[76]

Hartford argues that Century's Fourth Claim for Relief against Hartford, which Century has

labeled as a claim for "contribution," and Pacific's Fourth Claim for Relief against Hartford, in

which Pacific joins in and repeats the allegations of Century's contribution claim, are

subrogation claims that are barred by paragraph 6.4 of the Lease.  Century, on the other hand,

argues that its claim for contribution (which it interchangeably refers to as its reimbursement or

indemnification claim) is not a subrogation claim and is not barred by the waiver of subrogation

provision in the Lease.  Pacific joins in Century's argument.

---

[76](Hartford's Supporting Memo., Ex. 1 (Lease), at ¶ 6.4.)

After carefully considering Utah law, the court agrees with Hartford's position that Century's and Pacific's claims against Hartford in this matter are based on the doctrine of subrogation.

Subrogation is broadly defined as "'an equitable doctrine that allows a person or entity which pays the loss or satisfies the claim of another under a legally cognizable obligation or interest to step into the shoes of the other person and assert that person's rights.'"[77]  The purpose of subrogation "is to 'work out an equitable adjustment between the parties by securing the ultimate discharge of a debt by the person who, in equity and in good conscience, ought to pay it.'"[78]

In Utah, an "insurer succeeds to the insured's cause of action against a responsible third party" and can bring a subrogation action in its own name or in the name of its insured.[79]  While a "responsible third party" may in some cases be a tortfeasor, as argued by Century,[80] in Utah, the principle of subrogation has explicitly been "extended . . . to an action by an insurer against a second insurance company which is primarily liable to defend or pay any claims on behalf of its

_____

[77]*State Farm Mut. Auto. Ins. Co. v. Northwestern Nat'l Ins. Co.*, 912 P.2d 983, 985 (Utah 1996) (quoting *Educators Mutual Ins. Ass'n v. Allied Prop. & Cas. Ins. Co.*, 890 P.2d 1029, 1030 (Utah 1995)); *see Bakowski*, 52 P.3d at 1185.

[78]*State Farm*, 912 P.2d at 985 (quoting *Allstate Ins. Co. v. Ivie*, 606 P.2d 1197, 1202 (Utah 1980)); *see National Farmers Union Prop. & Cas. Co. v. Farmers Ins. Group*, 377 P.2d 786, 788 (Utah 1963) (describing subrogation as "an equitable device to compel the ultimate discharge of a debt or obligation by the one who in good conscience ought to pay or discharge it").

[79]*Bakowski*, 52 P.3d at 1185; *see* Utah Code Ann. § 31A-21-108 (2005); *Bakowski*, 52 P.3d at 1182 n.1; *State Farm*, 912 P.2d at 984; *National Farmers*, 377 P.2d at 786.

[80]While it is not entirely clear to the court, Century's position seems to be that a subrogation action or a subrogation claim can only arise in the limited circumstance where the "responsible third party" is a tortfeasor.

insured but which has denied coverage."[81]  An insurer's subrogation right to recover from a

responsible third party, including another insurer, "derives from the insurance contract between

the insurer and the insured," not from any relationship, contract or "implied contract," as argued

by Century.[82]

    Furthermore, after a careful review of Utah law, the court determines that while

contribution or reimbursement from one insurer to another insurer may in certain cases be the

intended outcome of a successful subrogation claim,[83] Utah courts have not drawn a distinction

---

[81]*State Farm*, 912 P.2d at 985 (citing *National Farmers*, 377 P.2d at 787-88).  For instance, where an excess insurer defends an insured that should have been covered and thus defended by a primary insurer, the excess insurer can assert a claim against the primary insurer and attempt to recover "by way of subrogation" the attorneys' fees and costs incurred in defending the insured.  *Sharon Steel Corporation v. Aetna Cas. & Surety Co.*, 931 P.2d 127, 137 (Utah 1997) (citing *National Farmers*, 377 P.2d at 786, 787-88).  Similarly, where one insurer settles a claim against an insured that allegedly should have been covered by a second insurance company, the first insurer may assert a "claim for subrogation" against the second insurer to recover the amount paid in settlement.  *State Farm*, 912 P.2d at 984-87; *see Sharon Steel*, 931 P.2d at 136-37.

[82]*Bakowski*, 52 P.3d at 1185-86.  According to Century,

        courts . . . have agreed that an excess insurer has a *direct* right of
        indemnification and contribution against another insurer which
        should have paid insurance benefits to a mutual insured but failed
        to do so.  These courts have noted that such claims belong directly
        to the excess insurer by virtue of the relationship between the excess
        and primary insurer – a relationship of implied contract.

(Century's Supplemental Memo. re: Indemnification, at 5 (emphasis added).)  Century, however, has not cited to any Utah case that supports its position.  And while the court is not aware of any Utah case that describes an excess insurer's claim against another insurer that allegedly should have paid benefits to a mutual insured as a "direct claim," Utah courts have clearly indicated that an excess insurer's claim against a primary insurer, as well as an insurer's claim against a co-insurer, are considered claims under the doctrine of "subrogation," which allows an insurer that pays the loss or satisfies the claim of its insured "to step into the shoes" of the insured and assert the insured's rights.  *See Bakowski*, 52 P.3d at 1185-86; *Sharon Steel*, 931 P.2d at 137-38; *State Farm*, 912 P.2d at 985-87; *National Farmers*, 377 P.2d at 787-88.

[83]*See Sharon Steel*, 931 P.2d at 137 ("We reasoned that equity allowed an insurer which paid a debt in full that was owed by another to obtain reimbursement from those who ought to have paid it.");  *id.* at 137-38 ("We agree with those jurisdictions that have allowed contribution where one insurer has paid more than its fair share of the defense costs. . . .  We thus conclude that Aetna does have a claim for equitable subrogation to compel Hartford to contribute its fair share of the defense expenditures."); *State Farm*, 912 P.2d at 986 (citing *National Farmers*, 377 P.2d at 786-87 and indicating that "this court allowed the plaintiff insurance company to obtain reimbursement for the costs and attorney fees which 'in good conscience' should have been paid by the defendant insurance company").

between subrogation claims and contribution claims.

In this case, Century and Pacific argue that under the terms of the Lease and the additional insured provisions in the Policies Hartford issued to VAST, Hartford was primarily liable to defend and pay the settlement of the claims asserted against Mountain States as a result of the Ramirez/Bakowski accident.  Century and Pacific seek to be reimbursed for the settlement and defense costs they incurred in relation to the Ramirez/Bakowski claims, which they argue they would not have incurred had Hartford provided additional insured coverage for Mountain States.  Based on the principles of Utah law set forth above, the court determines that Century's and Pacific's contribution claims stem from the alleged rights of their insured, Mountain States, and are based on the equitable doctrine of subrogation.[84]

However, the court's conclusion does not resolve the issue.  Next, the court must determine, as a matter of contract interpretation, whether the waiver agreed to by Mountain States and VAST in paragraph 6.4 of the Lease applies to and/or bars Century's and Pacific's claims against Hartford.

According to the plain language of paragraph 6.4, Mountain States and VAST agreed to a "mutual waiver of subrogation."[85]  Mountain States explicitly waived all of its and its insurers' "rights of recovery" against VAST and VAST's "officers, employees, agents and representatives" if the damage or loss from which such rights derive is covered by "any

---

[84]Even if Century and Pacific were arguing that Hartford was not primarily obligated, but was just equally obligated to cover the indemnification and defense costs associated with Ramirez's and Bakowski's claims against Mountain States, *Sharon Steel*, 931 P.2d 127 (Utah 1997) supports the conclusion that Century's and Pacific's claims against Hartford would still be considered subrogation claims.

[85](Hartford's Supporting Memo., Ex. 1 (Lease), at ¶ 6.4.)  *See Bakowski*, 52 P.3d at 1187 (describing the "plain language" of paragraph 6.4 of the Lease).

insurance policy in force at the time of such loss or damage."[86]

  As subrogated insurers, Century and Pacific step into the shoes of their insured, Mountain States, and are subject to any viable defenses that Hartford could assert against Mountain States.[87]  But, Hartford has not made any convincing argument that the waiver in paragraph 6.4 bars Century's and Pacific's claims in this case.

  Hartford does not claim to have been VAST's officer, employee, agent, or representative. Instead, Hartford's only argument as to why paragraph 6.4 bars Century's and Pacific's claims in this case is that the court should "follow[] the ruling in *Bakowski*" and determine that "just as Century's and Pacific's state court claims seeking indemnity against V[AST] are validly waived by the Lease's Paragraph 6.4, so too are Century's and Pacific's contribution claims seeking indemnity against Hartford validly waived by Paragraph 6.4."[88]

  In *Bakowski*, the Utah Supreme Court determined that "paragraph 6.4 validly waived the subrogation rights of Mountain States' insurers" to assert claims against VAST.[89]  However, the Utah Supreme Court did not consider the question of whether paragraph 6.4 waived the

---

[86](Hartford's Supporting Memo., Ex. 1 (Lease), at ¶ 6.4.)

[87]*Bakowski*, 52 P.3d at 1186.

[88](Hartford's Supplemental Brief re: S.J., at 14-15.)

[89]In *Bakowski*, the Utah Supreme Court determined:

> According to the plain language, Mountain States waived all causes of action against V[AST] to recover for damages that were paid under any insurance policy.  Because a subrogee insurer can succeed only to the rights of its insured and because all defenses available to a third party against the insured can be used against the subrogee insurer, it necessarily follows that in this case Mountain States' insurers are also precluded from pursuing a subrogation action in Mountain States' name to recover for damages against V[AST] that were paid by Mountain States' insurers.

52 P.3d at 1187 (citations omitted).

subrogation rights of Mountain States' insurers to assert claims against VAST's insurers, including Hartford.[90]  The court, therefore, determines that *Bakowski* is not determinative of the question before the court, which is whether the waiver of subrogation provision waived the right of Mountain States, or its subrogated insurers, to assert a claim against Hartford.  After considering Hartford's limited argument regarding the applicability of paragraph 6.4 of the Lease, and after its own consideration of the issue, the court is not persuaded that paragraph 6.4 of the Lease is a viable defense for Hartford, who at the time of the Ramirez/Bakowski accident was an insurer not only of VAST, but also of Mountain States as an additional insured.  Accordingly, Century's and Pacific's contribution claims, although based on the theory of subrogation, are not barred by paragraph 6.4 of the Lease.

### C.    The Allocation of Coverage Between the Insurers

Also before the court is Century's request that the court determine the allocation of coverage between, and the relative priorities of, the insurers: Century asks the court to determine that Hartford's and Pacific's insurance obligations to Mountain States were primary to Century's obligation to Mountain States.

Pacific similarly takes the position that Hartford's insurance obligations were primary to Pacific's obligation.  Pacific argues that under the facts of this case, the court should not determine the allocation of coverage between the insurers based on the language of the policies.  Pacific, who indicates that its policy would be considered a primary policy if only the policy

---

[90]Hartford apparently interprets the court's statement in *Bakowski* that "paragraph 6.4 validly waived the subrogation rights of Mountain States' insurers," as meaning that any subrogation claim by Mountain States' insurers is barred by the waiver of subrogation provision.  The *Bakowski* court's analysis, however, was specifically focused on the question before the court, which was whether Mountain States' insurers could assert a claim against VAST.  *Bakowski*, 52 P.3d at 1187-1188.

language were considered, urges the court to determine that based on VAST's insurance obligations under the Lease, the Hartford Policies and the Hanover policy, to which VAST was a named insured, were the only primary policies.[91]

Hartford disagrees with Pacific's position and argues that the proper analysis for determining priority and allocation of insurance coverage between multiple insurers is based on an interpretation of the language of the policies.  Hartford also argues that the issue of priority and allocation of coverage is not properly before the court because at the time of the summary judgment briefing, entire copies of the insurance policies had not yet been produced, which precluded the parties from properly analyzing the issue.

The court agrees with Hartford that the relative obligations of the insurers is properly determined by an analysis of the language in the relevant insurance policies, not by the terms of the Lease between Mountain States and VAST.[92]  The court also agrees with Hartford that the parties could not properly analyze the question of the allocation of coverage without complete copies of the relevant insurance policies.  Since the parties have now produced complete copies of the insurance policies at issue in this case, the court determines that supplemental briefing by the parties on this issue is appropriate at this time.[93]  This issue, including any supplemental briefing, will be considered by the court at a hearing scheduled for Tuesday, November 27, 2007

---

[91](Pacific's Supplemental Memo. re: S.J., at 2 ("If nothing more than the policy language were considered, each of the 'primary' insurers [(Hanover, Hartford, and Pacific)] would have been required to contribute by *equal shares* to the settlement of the Ramirez and Bakowski claims." (emphasis in original)).)

[92]*Carolina Cas. Ins. Co. v. Transport Indem. Co.*, 488 F.2d 790, 794 (10th Cir. 1973) ("[T]he primary insurer should be determined by looking to the insurance contracts and not by relying upon terms and provisions found not in them but in a lease agreement between the named insured.");  *Hagans v. Glens Falls Ins. Co.*, 465 F.2d 1249, 1251-52 (10th Cir. 1972).

[93](*See* Notice From the Court, dated April 19, 2007 (dkt. no. 159).)

at 2:30 p.m.

**D.**    **Century's and Pacific's Requests for Attorney's Fees**

Also before the court are Century's and Pacific's claims that they are entitled to recover from Hartford, as compensatory damages, the attorney's fees and costs that they have incurred in this case.  Given that the question of the relative obligations of the parties is not properly before the court at this time, the court finds it appropriate to further reserve decision on the question of attorney's fees raised by Century and Pacific.  The court will further consider this issue during the hearing in this matter scheduled for Tuesday, November 27, 2007 at 2:30 p.m.

For the reasons set forth above,

**IT IS ORDERED** that, as to the remaining issues presented in the parties' cross-motions for summary judgment, plaintiff Century's motion for partial summary judgment (dkt. no. 75), in which defendant and cross-claimant Pacific joins in part (dkt. no. 78) is GRANTED IN PART and DENIED IN PART, and defendant Hartford's cross-motion for summary judgment (dkt. no. 81) is DENIED.

**IT IS FURTHER ORDERED** that the above-captioned matter is hereby calendared for a hearing on **Tuesday, November 27, 2007 at 2:30 p.m.** for argument on the issue of the insurers' relative obligations and on Century's and Pacific's requests for the attorney's fees and costs that they have incurred in this case.  With respect to the issue of the insurers' relative obligations, Century and Pacific may file supplemental briefing by Wednesday, October 10, 2007; Hartford may file supplemental briefing by Tuesday, October 30, 2007; and Century and Pacific may file reply memoranda by Friday, November 9, 2007.

**DATED** this ___ day of September, 2007.

BY THE COURT:

_____
Bruce S. Jenkins
United States Senior District Judge

**DATED** this _18_ day of September, 2007.

BY THE COURT:

Bruce S. Jenkins
United States Senior District Judge